**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KEVIN FERGUSON,**

          **Petitioner,**

                                     **CASE NO. 2:15-CV-2448**

    **v.**                             **JUDGE GEORGE C. SMITH**

                                       **MAGISTRATE JUDGE KEMP**

**CHARLOTTE JENKINS,
WARDEN CHILLICOTHE
CORRECTIONAL INSTITUTION,**

          **Respondent.**

## OPINION AND ORDER

       Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties.

       For the reasons that follow, the petition for a writ of habeas corpus will be **DENIED** and this action is hereby **DISMISSED**.

### I.    Facts and Procedural History

       The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On May 30, 2012, appellant was indicted for one count of trafficking in cocaine. The charge arose out of an incident that occurred on August 23, 2011, and during appellant's jury trial, the following evidence was adduced.
>
> Corporal Nathanael Smith of the Franklin County Sheriff's Department testified that, while working as a detective in the special investigations unit, he received information from an informant that appellant and appellant's brother, Theo Ferguson, were dealing narcotics. During his investigation, Corporal Smith was introduced to and made a series of undercover drug purchases from Theo. The circumstances surrounding appellant's charge arose on August 23,

2011, at which time Corporal Smith went to Theo's apartment where he "was to purchase an ounce of crack cocaine from Theo." (Tr. 14.) Corporal Smith testified that when he arrived at Theo's, he was told if the supplier was not there in ten minutes, they would have to go to another location to meet the supplier. When the supplier did not arrive, Corporal Smith and Theo drove to meet him at a pizza place on Lockbourne Road. According to Smith:

On the way over, Theo Ferguson was telling me that he would go in, order a whole pizza for 1150, which in their code meant an ounce of crack cocaine for $1,150. When we arrived at the parking lot of the business, I gave—I'm sorry. I gave Theo Ferguson $1,150. He went inside, left me in the car, and came back about 5 minutes later and said everything is good, but it's going to be 10, 15 minutes. We drove up to a gas station to then kill some time and wait for it to be ready.

(Tr. 16.)

Once at the gas station, Corporal Smith testified as follows:

We go in to get something to drink, and Theo Ferguson came out on the phone, and he acted really upset. He was kind of arguing, but not really bad, but seemed upset on the phone, and hung up the phone. And I said, What's a matter, man? And he said, That was my brother. He wants to know why we're ordering so much. And he said that we have to go pick up his brother, but we have to go all the way back to his apartment on the east side—Theo Ferguson's apartment on the east side to meet his brother.

(Tr. 19–20.)

After Corporal Smith and Theo drove to Theo's apartment, appellant drove up in a mini van. According to Corporal Smith:

[Theo] said this is my brother. I believe [appellant] kind of took the lead there and said the guy—the supplier doesn't like to be kept waiting, so we needed to start going. And [appellant] got in the back seat of my car, and Theo got in the front passenger's seat of the car.

(Tr. 21–22.)

Corporal Smith testified that appellant was on the phone getting instructions from the supplier on where to go. Corporal Smith drove to a gas station on Georgesville Road, and, once there, both appellant

2

and Theo pointed out a black Lexus and instructed Corporal Smith to follow it. They followed the Lexus into a subdivision where the Lexus parked "all the way in the back." (Tr. 26.) Once parked, Corporal Smith gave the money to Theo who gave the money to appellant who counted the money and put it in his pocket. Appellant then walked to and entered the Lexus. After "about a minute," appellant exited the Lexus and returned to Corporal Smith's vehicle and the Lexus drove away. (Tr. 28.) Appellant entered Corporal Smith's vehicle and handed him a bag containing suspected crack cocaine. Corporal Smith was asked what happened next, and he testified:

I asked him—I said—I wanted to make sure it weighed out right, meaning I wasn't getting ripped off. He said the supplier is always right on point is what he told me. He said, You don't have to worry about him being light on the weight. And we weighed it out, and it came out on the digital scale with the bag and everything, it came out over an ounce, like 29 grams or something.

(Tr. 28–29.)

Corporal Smith also weighed the crack cocaine back at his office after the transaction was over, and the weight with the bag was 29.1 grams. Corporal Smith testified that the lab results indicated the substance was "27.6 grams, found to contain cocaine base. Crack cocaine." (Tr. 34.)

Amanda White, analyst at the Ohio Bureau of Criminal Identification and Investigation ("BCI"), conducted an analysis of the substance on February 6, 2013, approximately one and one-half years after the offense date. At this time, the substance weighed 23 .1 grams. According to White, "if you take cocaine hydrochloride, or the powder form of cocaine, and you boil it in water with baking soda, which is sodium carbonate, then that will precipitate out, or form the free-base form, which is the crack cocaine." (Tr. 86–87.) Because of this, when crack cocaine is created it normally contains some form of moisture. When asked to explain the difference in the weight, White testified, "[a]fter time, then the moisture will evaporate off and, typically, the weight will be less." (Tr. 87.)

The jury returned a verdict of guilty finding that the amount of crack cocaine involved at the time of the offense was 27 or more grams. At sentencing, the trial court imposed a four-year term of incarceration, a driver's license suspension, and a mandatory $10,000 fine.

Additionally, the trial court ordered restitution in the amount of $1,150 to be paid to the victim, the Franklin County Sheriff's Office Trust Fund.

II. ASSIGNMENTS OF ERROR

Appellant brings three assignments of error for our review:

[I.] The trial court erred when it entered judgment against the defendant for a conviction of a first-degree felony when the evidence was insufficient to sustain a finding, beyond a reasonable doubt, that the substance weighed twenty-seven grams or more at the time of the offense.

[II.] The trial court erred when it entered judgment against the defendant for a conviction of a first-degree felony when it was not established, by the manifest weight of the evidence and beyond a reasonable doubt, that the substance weighed twenty-seven grams or more at the time of the offense.

[III.] The trial court erred when it ordered the defendant to pay restitution, in the amount of $1,150.00, to the Franklin County Sheriff's Department as restitution for the buy money used in the case.

*State v. Ferguson*, No. 13AP-891, 2014 WL 3538552, at *1-3 (Ohio App. 10th Dist. July 17, 2014).

On July 17, 2014, the appellate court overruled Petitioner's first and second assignments of error, and sustained his third assignment of error, remanding the case to the trial court to vacate the $1,150 order of restitution. *Id*. Petitioner did not file a timely appeal. On October 8, 2014, he filed a motion for a delayed appeal with the Ohio Supreme Court. (ECF No. 6, PageID# 120.) As cause for his untimely appeal, Petitioner stated that, on August 20, 2014, he received a letter from his appellate counsel with a copy of the appellate court's decision denying his appeal, informing him that he had 45 days to file an appeal. (*See id*.) On November 19, 2014, the Ohio Supreme Court denied Petitioner's motion for delayed appeal. *State v. Ferguson*, 140 Ohio St.3d 1506 (Ohio 2014).

On October 16, 2014, Petitioner filed an application to reopen the appeal pursuant to Ohio

4

Appellate Rule 26(B).  (ECF No. 6, PageID# 136.)  He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of the denial of the effective assistance of trial counsel based on his attorney's failure to move for judgment of acquittal; failure to object to admission of the lab report and testimony of Detective Smith; and improperly advising Petitioner to reject the plea offer.  (PageID# 139-142.)  On December 11, 2014, the appellate court denied Petitioner's Rule 26(B) application.  (PageID# 153.)  Petitioner filed a motion for reconsideration.  (PageID# 159.)  On January 27, 2015, the appellate court denied Petitioner's motion for reconsideration.  (PageID165.)  Petitioner filed a timely appeal.  (PageID# 167.)  On June 3, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (PageID# 180.)

Petitioner also pursued post conviction relief.  On September 22, 2014, he filed a Motion to Vacate and Void Conviction in the state trial court on the grounds that the trial court lacked jurisdiction "in the absence of a sufficient formal accusation[.]" (PageID# 181.) Petitioner also filed a Motion for Default Judgment.  (PageID# 215.)  On December 30, 2014, the trial court denied Petitioner's Motion to Vacate Sentence and Void Conviction and Motion for Default Judgment, holding that his claims were barred under Ohio's doctrine of *res judicata*.  (PageID# 230.) Petitioner apparently did not file an appeal.

On June 24, 2015, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He asserts that the evidence is constitutionally insufficient to sustain his conviction (claim one); that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of the denial of the effective assistance of trial counsel based on his attorney's failure to move for judgment of acquittal; failure to object to the use of the

initial lab report and testimony by Detective Smith regarding drug weight; improperly advising Petitioner to reject the plea offer; and failing to timely advise Petitioner of the appellate court's decision denying his appeal (claims two, three, four, and five); and that he was denied his right to confrontation (claim four).  It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## II.    Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*).  Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.... Second, the court must decide whether the state courts actually enforced the state procedural sanction.... Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.* "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman,* 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id.* at 750.

Nevertheless, " '[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Murray*, 477 U.S. at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1892)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find

7

him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

In claim one, Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction. Petitioner raised this claim on direct appeal; however, he failed thereafter to file a timely appeal with the Ohio Supreme Court, and the Ohio Supreme Court denied his motion for a delayed appeal. The United States Court of Appeals for the Sixth Circuit has held that the Ohio Supreme Court's denial of a motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

In claim four, Petitioner asserts, *inter alia*, that he was denied his right to confrontation. Petitioner failed to raise this claim on appeal. Further, he may now no longer do so, by operation of Ohio's doctrine of *res judicata*. Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D.Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v.  Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker*,

224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner therefore has waived claim one, and his claim that he was denied his right to confrontation, for federal habeas corpus review.

He may still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003).

As cause for his procedural default in failing to file a timely appeal to the Ohio Supreme Court, and in habeas corpus claim five, Petitioner asserts the denial of the effective assistance of appellate counsel based on his attorney's failure to timely notify him of the appellate court's decision denying his appeal. The constitutionally ineffective assistance of counsel may constitute

9

cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)).

In his motion for a delayed appeal to the Ohio Supreme Court, Petitioner stated that, on August 20, 2014, he received a copy of the appellate court's decision denying his appeal with a letter from his appellate counsel advising him that he had 45 days from its date of entry to file an appeal with the Ohio Supreme Court. Petitioner raised his *pro se* incarcerated status, and limited access to the prison's law library as additional grounds for the untimely filing. (ECF No. 6, PageID# 120-121.) Petitioner attached a letter from his attorney, dated August 18, 2014, advising Petitioner that he would no longer be representing him, and indicating:

> Should you wish to continue the legal process, the next step is to file a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court within forty-five days of the date on the court's judgment entry. We will not be representing you any further and you must contact the Ohio Public Defender, represent yourself, retain counsel, or make other arrangements for appointed counsel if you wish to pursue the matter in the Ohio Supreme Court.

(ECF No. 6, PageID# 123.)

A prisoner's *pro se* status, ignorance of the law and procedural requirements for the filing of an appeal, and limited access to the prison's law library do not constitute cause for a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)(citing *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)).

> The Sixth Circuit has held that because the constitutional right to effective assistance of counsel during a direct appeal as of right does "not terminate the moment the court of appeals hands down its decision," but extends to include the duty of informing one's client of the outcome of the proceeding, appellate counsel's delayed notice to his client of the direct appeal decision may constitute ineffective

> assistance sufficient to establish cause for the client's failure to file a timely appeal with the state's highest court. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433–35 (6th Cir.2006).

*Hubbard v. Warden, London Correctional Institution,* No. 109cv550, 2010 WL 3931500, at *5 (S.D. Ohio Sept. 7, 2010). However, assuming that Petitioner did not obtain notification of the appellate court's decision denying his appeal until August 20, 2014, this Court is not persuaded that Petitioner thereby has established cause for his procedural default. Nothing in the record supports his claim that he was prevented from, or could not have nonetheless filed a timely appeal.

For example, in *Maciel v. Carter,* 22 F.Supp.2d 857 (N.D. Ill. 1998)*,* the petitioner argued that he had established cause for his six month delay in filing an appeal because "(a) the state court delayed notifying him of the disposition of his post-conviction petition; (b) the prison delayed forwarding the tardily-sent notice to [him]; and (c) because the prison was on lockdown, [he] was unable to communicate with others, obtain legal assistance, or research the law himself in order to prepare his own appeal." The District Court held that Maciel had failed to establish cause for his procedural default, noting that since he had received actual notice "just days before his notice of appeal was due," it could not be the State's fault that he filed an untimely appeal. "Maciel needed only to reallege the allegations in his post-conviction petition, basically in 'form' fashion, and send it to the Illinois appellate court. He did not need to conduct extensive—indeed, any—research to do so. Nor did he require legal assistance." *Id.*

Here, Petitioner had at least eleven days to file his appeal from the date that he claims he obtained notification of the appellate court's decision denying his appeal. Moreover, his attorney advised him of the time requirement for filing a timely appeal. Petitioner did not need to conduct further legal research in order to file the appeal. *See also Hubbard v. Warden, London Correctional*

11

*Institution*, No. 109cv550, 2010 WL 3931500, at *5 (S.D. Ohio Sept. 7, 2010)(where the petitioner conceded that he learned of the appellate court's decision well within the time-frame for perfecting a timely appeal, he cannot show that any error by his appellate counsel in notifying him of the decision caused him to miss the filing deadline); *but see Williams v. Roberts*, 2009 WL 57526, at *4 (N.D. Ill. Jan. 8, 2009)(Petitioner established cause for his procedural default when clerk sent notice to wrong prison institution, despite being notified of the petitioner's current address, and it was not received until after the time period had expired to file an appeal).  Therefore, the Court is not persuaded that Petitioner has established the denial of the effective assistance of counsel on this basis.

Further, the record fails to reflect that Petitioner is actually innocent, so as to justify a merits review of his procedurally defaulted claim.  *See Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005)(to establish actual innocence, a petitioner must present new reliable evidence that shows "that it is more likely than not that no reasonable juror" would have found him guilty beyond a reasonable doubt.)(citing *Schlup,* at 327).

### III.    Ineffective Assistance of Appellate Counsel

#### A.    Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*,

—— U.S. ——, ——, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011));

*see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard

for evaluating state-court rulings, and demands that statecourt decisions be given the benefit of the

doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §

2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was

contrary to, or involved an unreasonable application of, clearly established federal law as determined

by the Supreme Court, or based on an unreasonable determination of the facts in light of the

evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing

*Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show

that the state court's decision was "contrary to, or involved an unreasonable application of, clearly

established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied

on an "unreasonable determination of the facts in light of the evidence presented in the State court

proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these

standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if
> (1) "the state court arrives at a conclusion opposite to that reached by
> [the Supreme] Court on a question of law[,]" or (2) "the state court
> confronts facts that are materially indistinguishable from a relevant

13

> Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, ... [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) (" '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision).

14

Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of the denial of the effective assistance of trial counsel based on his attorney's failure to move for judgment of acquittal based on the State's failure to establish the weight of the drugs at issue; failure to object to the use of the initial lab report and testimony by Detective Smith regarding drug weight; and improperly advising Petitioner to reject the plea offer.  The state appellate court rejected these claims reasoning in relevant part as follows:

> In *Ferguson I*, we rejected appellant's contention that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.  Our decision reads, in relevant part, as follows:
>
>> According to BCI's October 12, 2011 laboratory report, the crack cocaine weighed 27.3 grams, and according to the re-weigh done on February 6, 2013, the crack cocaine weighed 23.1 grams.  WhiteFN1 testified to the process involved in making crack cocaine and explained that the moisture from the manufacturing process will evaporate, and, therefore, crack cocaine typically weighs less over time.  The evidence that the crack cocaine weighed 27.3 grams when initially tested is sufficient evidence that appellant sold an amount of crack cocaine equal to or exceeding 27 grams.  The fact that it weighed less 17 months later does not change the sufficiency of this evidence, nor does it render a conviction for trafficking an amount equal to or exceeding 27 grams against the manifest weight of the evidence.
>>
>> FN1:  Amanda White is an analyst at the Ohio Bureau of Criminal Identification and Investigation ("BCI").

15

***

>  Upon review of all the evidence, we conclude that appellant's conviction for trafficking in cocaine, a first-degree felony, in violation of R.C. 2925.03, is neither based upon insufficient evidence nor is against the manifest weight of the evidence.

*Id*. at ¶ 25, 27.

In appellant's first proposed assignment of error, he claims that appellate counsel performed poorly in failing to argue on appeal that trial counsel committed a critical error by not moving the trial court for acquittal due to insufficient evidence of the weight of the cocaine. We note that the trial transcript reveals that appellant's trial counsel moved the court for acquittal, on other grounds, but that the trial court denied the motion. (Tr. 95-96.) However, even if counsel had made the argument now advanced by appellant, it is evident from our conclusion in *Ferguson I* that such a motion would have been meritless.

. . . [A]ppellate counsel is not required to argue assignments of error that are meritless. . . . Accordingly, we find that appellant's first proposed assignment of error fails to raise a colorable issue of ineffective assistance of appellate counsel.

In appellant's second proposed assignment of error, he claims that appellate counsel performed poorly when he neglected to argue that trial counsel committed a critical error by failing to object either to the admission of the October 12, 2011 lab report or the testimony of Corporal Smith. In *Ferguson I*, we summarized Smith's trial testimony as follows:

>  The evidence presented at trial establishes that Corporal Smith weighed the substance at the time of the transaction, and, including the baggie, the substance weighed "like 29 grams or something." (Tr. 29.)  Appellant attacks this evidence as being improper and inaccurate.  However, the jury was aware of this, as Corporal Smith testified on cross-examination that the weight from his digital scale was not an "official" measurement and Corporal Smith agreed that it could be inaccurate. (Tr. 63.)  After returning to his office, Corporal Smith testified he put

16

the substance on a scale, took a picture of it, and conducted a field test. Corporal Smith testified that, including the baggie, the scale in the photograph reads 29.1 grams. After photographing and weighing the substance in the office, it was sealed and sent to BCI for testing and weighing.

*Id*. at ¶ 24.

In our view, appellant's challenge to Smith's testimony speaks to the issue of weight rather than admissibility. Consequently, an objection would not have resulted in the exclusion of the testimony. Moreover, as we noted in our decision, appellant's trial counsel made the jury aware of the specific weaknesses in Smith's testimony. Contrary to appellant's assertion, the record does not demonstrate poor performance by trial counsel with respect to Smith's testimony.

Furthermore, to the extent that appellant challenges trial counsel's failure to object to the October 12, 2011 lab report, we note that, under R.C. 2925.51, such reports constitute prima facie evidence of the content, identity, and weight of the tested substance. R.C. 2925.51(A). . . . In fact, when the state satisfies the notice requirements of the statute, it is up to the defendant to demand the testimony of the person signing the report. R.C. 2925.51(D). . . . Appellant's trial counsel made no demand for the testimony of the technician who signed the report. Consequently, under the statutory scheme, trial counsel had no legal basis to object to the authenticity of the report. Even if appellant had argued in his motion that trial counsel should have demanded the testimony of the lab technician, appellant makes no claim that the state would have been unable to procure the necessary testimony if requested to do so.

For the foregoing reasons, we find that appellant's second proposed assignment of error fails to demonstrate a colorable issue of ineffective assistance of appellate counsel.

In appellant's third proposed assignment of error, appellant argues that appellate counsel performed poorly by failing to argue that appellant's trial counsel erroneously advised him to reject the plea deal offered by the state. In considering such a claim, our review is hindered by the fact that the record contains no evidence of the specific discussions trial counsel had with appellant regarding the plea offer. Moreover, even if we accept appellant's contention that his trial counsel convinced him to reject the plea, appellant does not

17

> claim that his trial counsel told him that he would not be convicted if the second test showed that the cocaine weighed less than 27 grams.  Appellant also admits that he knew the state would withdraw the plea offer if he insisted on conducting a second test to determine the weight of the cocaine.  Although appellant now claims that the decision to reject the plea offer was a poor one, the record reveals that the results of the second test raised a genuine factual issue regarding the weight of the cocaine.  The jury simply chose to believe the evidence offered by the state.
>
> An appellate attorney has wide latitude and the discretion to decide which issues and arguments will prove most useful on appeal. . . . Under the circumstances, appellant has not demonstrated a colorable claim of ineffective assistance of appellate counsel in regard to his decision to reject the plea deal offered by the state.

Memorandum Decision (ECF No. 6, PageId# 155-58.)

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.  To establish the second prong of the *Strickland* test, prejudice, a Petitioner must demonstrate that there is a reasonable probability

18

that, but for counsel's errors, the result of the proceedings would have been different.  *Id*. at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective

assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it

need not consider the other.  *Id*. at 697.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776, 781–82

(1987). Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v.

Lucey,* 469 U.S. 387, 396–97 (1985).  The attorney need not advance every argument, regardless of

merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752 (1983).  " '[W]innowing out

weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence

of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527,

536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751–52).  To evaluate a claim of ineffective

assistance of appellate counsel, then, the court must assess the strength of the claim that counsel

failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011)(citing *Wilson v. Parker*, 515 F.3d

682, 707 (6th Cir. 2008)). Counsel's failure to raise an issue on appeal amounts to ineffective

assistance only if a reasonable probability exists that inclusion of the issue would have changed the

result of the appeal. *Id*. (citing *Wilson*).  If a reasonable probability exists that the defendant would

have prevailed had the claim been raised on appeal, the court still must consider whether the claim's

merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate

counsel. *Id*. (citing *Wilson*).  The Court of Appeals for the Sixth Circuit has identified the following

considerations that ought to be taken into account in determining whether counsel on direct appeal

performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427–28 (6th Cir.1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674 (6th Cir.2000)(citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161–62 (6th Cir. 1994)). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)(citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). "Counsel's performance is strongly presumed to be effective." *McFarland,* (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000) (citing *Strickland*)). "To prevail on a claim of

ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000)(quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)).  Petitioner has failed to meet this standard here.

As discussed by the state appellate court, the State presented sufficient evidence of the identifying the substance and weight of the drugs involved, and defense counsel therefore could not have obtained a judgment of acquittal.

> Appellant was convicted of trafficking in cocaine in violation of R.C. 2925.03, which prohibits a person from knowingly selling or offering to sell a controlled substance. Effective September 30, 2011, R.C. 2925.03 provides that if the amount of the drug involved equals or exceeds 27 grams but is less than 100 grams, the offense is a first-degree felony, and if the drug involved equals or exceeds 20 grams but is less than 27 grams, the offense is a second-degree felony.

> " 'Sale' includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 2925.01(A) (incorporating definition found in R.C. 3719.01(AA)). "[F]or purposes of R.C. 2925.03(A), the phrase, 'offer to sell a controlled substance,' simply means to declare one's readiness or willingness to sell a controlled substance or to present a controlled substance for acceptance or rejection. Furthermore, the issue of whether a defendant has knowingly made an offer to sell a controlled substance in any given case must be determined by examining the totality of the circumstances, including 'the dialogue and course of conduct of the accused.' " (Emphasis sic.) *State v. Burton*, 2d Dist. No. 94–CA–13 (Mar. 31, 1995), quoting *State v. Patterson*, 69 Ohio St .2d 445, 447 (1982); *see also State v. Vaughn*, 5th Dist. No.2011–COA–021, 2012–Ohio–316; *State v. Henton*, 121 Ohio App.3d 501, 510 (11th Dist.1997).

> The evidence presented at trial establishes that Corporal Smith weighed the substance at the time of the transaction, and, including the baggie, the substance weighed "like 29 grams or something." (Tr. 29.) . . . After returning to his office, Corporal Smith testified he put the substance on a scale, took a picture of it, and conducted a field

test. Corporal Smith testified that, including the baggie, the scale in the photograph reads 29.1 grams. After photographing and weighing the substance in the office, it was sealed and sent to BCI for testing and weighing.

According to BCI's October 12, 2011 laboratory report, the crack cocaine weighed 27.3 grams, and according to the re-weigh done on February 6, 2013, the crack cocaine weighed 23.1 grams. White testified to the process involved in making crack cocaine and explained that the moisture from the manufacturing process will evaporate, and, therefore, crack cocaine typically weighs less over time. The evidence that the crack cocaine weighed 27.3 grams when initially tested is sufficient evidence that appellant sold an amount of crack cocaine equal to or exceeding 27 grams. The fact that it weighed less 17 months later does not change the sufficiency of this evidence, nor does it render a conviction for trafficking an amount equal to or exceeding 27 grams against the manifest weight of the evidence. *State v. Jones*, 7th Dist. No. 06 MA 17, 2007–Ohio–7200 (where the jury was advised that water evaporates from crack cocaine over time, evidence that crack cocaine weighed 10.31 grams when first tested, as opposed to 7 .783 grams five months later, was sufficient to establish the defendant sold an amount equal to or exceeding 10 grams); *State v. Hodge,* 2d Dist. No. 23964, 2011–Ohio–633 (when determining the weight of crack cocaine, the trier of fact is not required to disregard the weight of moisture contained therein).

*State v. Ferguson*, 2014 WL 3538552, at *4-7.

Petitioner does not dispute the factual findings of the state appellate court, nor has he met his burden of rebutting the presumption of correctness granted to these findings of facts.  Those findings indicate that the State presented sufficient evidence that Petitioner was involved in a drug transaction involving 27 grams or more of cocaine.  Trial counsel's failure to request a judgment of acquittal on this basis therefore did not constitute unreasonable performance as that term is defined under *Strickland,* and appellate counsel did not perform in a constitutionally ineffective manner by failing to raise such claim on direct appeal.  Further, as discussed by the state appellate court, pursuant to O.R.C. § 2925.51(A), the laboratory report constituted "prima-facie evidence of the

content, identity, and weight" of the substance at issue, absent a demand by defense counsel for the testimony of the person signing the report. § 2925.51(C). The record does not suggest that the State could not have produced the testimony of the person signing the report upon request. Counsel's decision not to make such a request therefore appears to have been a reasonable strategic decision which is entitled to deference and does not amount to constitutionally ineffective performance under these circumstances. *See Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000)(strategic decisions of defense counsel "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable")(citing *Strickland*, at 690-91).

Petitioner also asserts that his attorney should have raised on appeal a claim that his attorney performed in a constitutionally ineffective manner by failing to raise on appeal a claim that defense counsel improperly advised him to reject the plea offer and request a second lab report regarding the weight of the drugs. Petitioner argues that, but for this improper advice, he would not have proceeded to trial, but would have entered a guilty plea and thereby obtained a lesser sentence.

A criminal defendant is entitled to the effective assistance of counsel during the plea negotiation process. *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376 (2012).

> Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

23

*Id*. at 1385. The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiation stage:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available

*Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992)).  However, a petitioner who later complains of a lost plea bargain must also establish prejudice.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it....

*Id*. at 1409.  In this regard, a petitioner must show that, "if the prosecution had the discretion to cancel [the plea offer], or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."  *Id*. at 1410.  However, an attorney's failure to insist that his client accept a plea offer due to overwhelming evidence of guilt does not constitute constitutionally ineffective assistance.

> The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the

24

> ultimate decision of whether to go to trial must be made by the person
> who will bear the ultimate consequence of a conviction.

*Id.*

The record on appeal contained no evidence regarding the discussions between Petitioner and his attorney.  Such off-the-record evidence would properly be presented in a petition for post conviction relief pursuant to O.R.C. § 2953.21.  Without such record support, Petitioner's claim that his attorney gave him improper advice causing him to reject the government's plea offer had little likelihood of success, and appellate counsel did not perform in a constitutionally ineffective manner in failing to raise the issue.

### IV.    Disposition

Therefore,  the petition for a writ of habeas corpus will be **DENIED** and this action is hereby

**DISMISSED**.

**IT IS SO ORDERED.**

  _/s/ George C. Smith_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**